Terance **RAJBAHADOORSINGH,**
Plaintiff,

v.

**CHASE MANHATTAN BANK,**
**NA and Chase Manhattan**
**Corp., Defendants.**

Civ. No. 1999–001.

District Court, Virgin Islands,
D. St. Thomas and St. John.

Oct. 29, 2001.

---

Archie Jennings, St. Thomas, VI, for plaintiff.

David J. Comeaux, Charles E. Engeman, St. Thomas, VI, for defendants.

## MEMORANDUM

MOORE, District Judge.

Defendants Chase Manhattan Bank, NA[1] and Chase Manhattan Corporation [collectively "Chase" or "defendants"] have moved for summary judgment. Terance Rajbahadoorsingh ["Rajbahadoorsingh" or "plaintiff"] opposes this motion. For the reasons set forth below, the Court will grant Chase's motion.

## I. FACTS

Rajbahadoorsingh, a West Indian male, worked for Chase as a consumer loan sales manager. He was responsible for generating consumer loans, particularly from customers borrowing money to purchase automobiles. Chase discovered that Rajbahadoorsingh allegedly was personally involved in the purchase and sale of automobiles in competition with Chase's referral sources, which put him in conflict with his duties to Chase. Chase learned of this activity upon receiving complaints from dealerships and individual sellers from whom Rajbahadoorsingh had diverted buyers seeking auto loans from Chase. Soon thereafter, Clara Bryan ["Bryan"], the head of Chase's human resources department, met with Cassan Pancham ["Pancham"], Rajbahadoorsingh's superior, and Rajbahadoorsingh himself and warned plaintiff to cease his activities or face termination. Rajbahadoorsingh denied any involvement in buying and selling cars.

After this meeting, Chase received a formal written complaint from Sherman Smith ["Smith"] about Rajbahadoorsingh's conduct. Smith related that he had brought Rajesh Persad ["Persad"] to Chase to assist Persad in applying for a loan to buy Smith's truck. Persad was introduced to Rajbahadoorsingh, who encouraged him to apply for a loan with Chase. Smith said that, shortly thereafter, Rajbahadoorsingh dissuaded Persad from completing the purchase of the truck and instead encouraged him to buy a red BMW in Rajbahadoorsingh's possession. Rajbahadoorsingh was suspended for two

1. In its Memorandum in Support of Motion for Summary Judgment, the Defendants note that Chase Manhattan Bank, NA should be named as The Chase Manhattan Bank. Defendants, however, have yet to file a motion to correct the caption to this matter.

weeks with pay pending an investigation regarding Smith's complaint. At the close of the investigation, Chase concluded that Rajbahadoorsingh had engaged in activities that conflicted with Chase's interests and therefore violated Chase policies. Accordingly, Bryan, Pancham and Cecile de Jongh ["de Jongh"], the group consumer credit manager, terminated Rajbahadoorsingh's employment. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 4 V.I.C. § 33.

## II. LEGAL STANDARDS

### A. Summary Judgment Standard

Summary judgment shall be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue respecting any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Sharpe v. West Indian Co.*, 118 F.Supp.2d 646, 648 (D.Vi.2000). The nonmoving party may not rest on mere allegations or denials, but must establish by specific facts that there

is a genuine issue for trial from which a reasonable juror could find for the nonmovant. *See Saldana v. Kmart Corp.*, 42 V.I. 358, 360–61, 84 F.Supp.2d 629, 631–32 (D.Vi.1999), *aff'd in part and rev'd in part,* 260 F.3d 228 (3d Cir.2001). Only evidence admissible at trial shall be considered and the Court must draw all reasonable inferences therefrom in favor of the nonmovant. *See id.*

### B. Discrimination Standard

Even though Rajbahadoorsingh has three different federal discrimination claims against Chase,[2] the requirements for establishing a prima facie federal case of employment discrimination are identical.[3] The Supreme Court of the United States established a three-prong test for going forward with a discrimination suit in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) and later modified this test in *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981) and *St. Mary's Honor*

---

**2.** Rajbahadoorsingh sued Chase for: (1) violation of his civil rights under Title VII of Civil Rights Act under 42 U.S.C. § 1981 and 42 U.S.C. § 2000e–2; and (2) age discrimination under to the Age Discrimination in Employment Act ["ADEA"], 29 U.S.C. § 623. Section 1981(a) provides that "all persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts ... and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens ...." 42 U.S.C. § 1981(a). Section 2000e–2(a) provides that it "shall be an unlawful employment practice for an employer—(1) ... to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race ...." 42 U.S.C. § 2000e–2(a). Section 623(a)(1) provides that it is unlawful for an employer "to fail or refuse to hire or to dis-

charge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). Rajbahadoorsingh also brought suit against Chase under the Virgin Islands Wrongful Discharge Act, 24 V.I.C. § 76, and for breach of contract. The wrongful discharge claim will be discussed *infra* at III.B. This Court dismissed the breach of contract claim for lack of evidence at the close of the hearing on May 25, 2001.

**3.** *See Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 142, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) (assuming that the *McDonnell Douglas* framework applies to the ADEA); *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 506, 506 n. 1, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993) (noting that the *McDonnell Douglas* framework is identical for all Title VII actions).

*Center v. Hicks,* 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).

First, the plaintiff "must carry the initial burden under the statute establishing a prima facie case of [unlawful] discrimination." *McDonnell Douglas Corp.,* 411 U.S. at 802, 93 S.Ct. 1817. To accomplish this, the plaintiff must show that: (1) he is part of a protected class; (2) he was qualified for his position; (3) despite these qualifications, he was terminated; and (4) he was replaced by a member of a non-protected class or "someone in a non-protected class, otherwise similarly situated, was treated more favorably." *See Hicks,* 509 U.S. at 506, 113 S.Ct. 2742; *Burdine,* 450 U.S. at 253 n. 6, 101 S.Ct. 1089; *McDonnell Douglas Corp.,* 411 U.S. at 802, 93 S.Ct. 1817; *Fuentes v. Perskie,* 32 F.3d 759, 763 (3d Cir.1994); *Hicks v. Arthur,* 878 F.Supp. 737, 738 (E.D.Pa.1995), *aff'd,* 72 F.3d 122 (3d Cir.1995). Under this first prong, "[e]stablishment of the prima facie case in effect creates a presumption that the employer unlawfully discriminated against the employee." *Burdine,* 450 U.S. at 254, 101 S.Ct. 1089.

Once the plaintiff establishes this presumption, the burden of production shifts to the defendant to "articulate some legitimate, nondiscriminatory reason for the employee's rejection." *McDonnell Douglas Corp.,* 411 U.S. at 802, 93 S.Ct. 1817. Under this second prong, the employer has the burden of producing rebuttal evidence. *See Hicks,* 509 U.S. at 506–07, 113 S.Ct. 2742; *see also Burdine,* 450 U.S. at 255, 255 n. 9, 101 S.Ct. 1089 (noting that such evidence must be admissible). The employer can satisfy this burden "by introducing evidence which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the unfa-

vorable employment decision." *Fuentes,* 32 F.3d at 763 (citing *Hicks,* 509 U.S. at 507, 113 S.Ct. 2742). This second prong does not require the employer to prove "that it was actually motivated by the proffered reasons. It is sufficient if the [employer's] evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff." *Burdine,* 450 U.S. at 254, 101 S.Ct. 1089. Even though the burden of production shifts to the defendant, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Id.* at 253, 101 S.Ct. 1089.

Finally, after the defendant has offered a legitimate, nondiscriminatory reason for its actions, the burden of production under the third and final prong shifts back to the plaintiff to show, by a preponderance of the evidence, that the proffered reason is pretextual. *See id.* at 256, 101 S.Ct. 1089. To satisfy this burden, "the plaintiff must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Fuentes,* 32 F.3d at 764 (citing *Hicks,* 509 U.S. at 511, 113 S.Ct. 2742).

## III. DISCUSSION

### A. Rajbahadoorsingh's Discrimination Claims

Assuming *arguendo* that Rajbahadoorsingh can establish a prima facie claim of employment discrimination,[4]

---

4. For purposes of this memorandum and order, I will assume that Rajbahadoorsingh can establish a prima facie case of discrimination.

He obviously is a member of a protected class, was qualified for his position, and was terminated. There is, however, some doubt

Chase has established a legitimate, nondiscriminatory reason for his termination—namely that Rajbahadoorsingh's side business of buying and selling cars constituted a conflict of interest. Hence, the viability of Rajbahadoorsingh's employment discrimination claims hinges on his ability to discredit Chase's proffered explanation. "The fact that a judge or jury might disbelieve the defendant's asserted nondiscriminatory reason is not enough, by itself, to preclude summary judgment. Rather, the plaintiff must be able to adduce evidence, whether direct or circumstantial, from which a reasonable [person] could conclude that the defendant's explanation is incredible." *Chauhan v. M. Alfieri Co.*, 897 F.2d 123, 128 (3d Cir.1990) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). This Court concludes that Rajbahadoorsingh has failed to satisfy this burden.

Rajbahadoorsingh attempts to show that Chase's proffered reason was pretextual by presenting an affidavit of Leslie Millin, Jr. (the "Millin affidavit"), which Rajbahadoorsingh proffers to show the discriminatory nature of a Chase employee, and by arguing that Chase's investigation of his alleged misconduct was flawed. Neither of these pieces of evidence supports a conclusion that Chase's proffered reason for terminating Rajbahadoorsingh was "incredible."

The Millin affidavit describes statements made by Pancham, and overheard by Millin, to an unidentified individual. (Millin aff., Pl's Opp. to Mot. for Summ. J., Ex. D.) Pancham allegedly referred to Rajbahadoorsingh "as a thief and a crook." In addition, Pancham allegedly stated that Rajbahadoorsingh "could never be trusted to do anything of benefit to the bank, as he was only out for himself" and that he "would only help someone if it would put money if his pocket." (*Id.*) Finally, Pancham purportedly stated that "he would transfer [Rajbahadoorsingh] to different branches, like a fool so he could not successfully negotiate his transactions" and that he (Pancham) "would continue to make life difficult for [Rajbahadoorsingh] as he is an embarrassment to the entire institution." (*Id.*)

Despite the apparent harshness of Pancham's statements, they evince neither racial nor age discrimination. First, Pancham is of the same race as Rajbahadoorsingh.[5] Thus, it is hard to fathom how Pancham's statements could be construed to show that Rajbahadoorsingh's termination was racially motivated. Second, there is no mention of Rajbahadoorsingh's age anywhere in the Millin affidavit.[6]

---

regarding the fourth requirement-whether he was replaced by a member of a non-protected class or that a similarly situated member of a non-protected class was treated more favorably. (Defs.' Mem. in Supp. of Mot. for Summ. J. at 12–13 (disputing these notions).) This disputed fact, however, is not material as it is not outcome determinative. If Rajbahadoorsingh is unable to prove the fourth requirement, thereby failing to establish a prima facie case of discrimination, summary judgment in favor of Chase would be justified. As it is, Rajbahadoorsingh has not overcome Chase's proffered reason for his termination. In either instance, summary judgment in favor of Chase is warranted.

5. In his deposition, Rajbahadoorsingh described Pancham as a West Indian male; the same race as him. (Dep. of Terance Rajbahadoorsingh, Jan. 30, 2001 at 33.)

6. In his opposition to Chase's motion for summary judgment, Rajbahadoorsingh relies heavily on the *Reeves* case to establish the pretextual nature of Chase's legitimate, nondiscriminatory reason. *Reeves*, however, is readily distinguishable. There, the employee was able to point to specific statements by his employer which cast doubt on the veracity of the proffered reason for his termination. *See Reeves v. Sanderson Plumbing Products, Inc.*, 197 F.3d 688, 691 (5th Cir.1999), *rev'd*, 530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105

Therefore, I can not read into Pancham's alleged statements any underlying motivation to terminate Rajbahadoorsingh based on age.

 Likewise, Rajbahadoorsingh's contention that the investigation into his activities was flawed due to its cursory nature and was merely a front for the bank's true discriminatory reason for his termination must fail. Rajbahadoorsingh presents numerous affidavits from individuals asserting that he never solicited customers of local car dealerships to purchase automobiles. (Pl.'s Opp. to Mot. for Summ. J. at 8–9.) As Rajbahadoorsingh contends that this fact was never investigated, it appears he is arguing that Chase was mistaken in regard to his activities. The Third Circuit Court of Appeals has specifically rejected such an argument.

> [T]he plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent. Rather, the non-moving plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them 'unworthy of credence,' and hence infer 'that the employer did not act for [the asserted] nondiscriminatory reasons.

*Fuentes*, 32 F.3d at 765 (internal citations omitted). Accordingly, Rajbahadoorsingh's argument is without merit.

Moreover, the affidavits he has provided do not show any apparent inconsistencies. In fact, they support Chase's termination of Rajbahadoorsingh for conflict of interest based on his buying and selling cars. (Persad Aff., Pl's Opp. to Mot. for Summ. J., Ex. G (stating that he bought a car from the plaintiff); Todman Aff., Pl's Opp. to Mot. for Summ. J., Ex. H (noting that the plaintiff was involved in the sale of his girlfriend's car); Pemberton Aff., Pl's Opp. to Mot. for Summ. J., Ex. I (stating that the plaintiff was involved in multiple car sales).) As Rajbahadoorsingh's own evidence shows he was involved in the buying and selling of automobiles, Chase was justified in relying on this legitimate, nondiscriminatory reason for his termination. Even if Rajbahadoorsingh is attempting to use these affidavits to point out inconsistencies or contradictions in Chase's proffered reason, such an argument is groundless.

Accordingly, Rajbahadoorsingh has failed to provide evidence sufficient to permit this Court reasonably to "(1) disbelieve [Chase's] articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of [Chase's] action." *Fuentes*, 32 F.3d at 764 (citations omitted). Therefore, I will grant defendants' motion for summary judgment on plaintiff's federal discrimination claims.

**B. Rajbahadoorsingh's WDA Claim**

 Although not technically a discrimination statute, the WDA shares many of the same characteristics of the aforementioned discrimination statutes.[7] The

---

(2000) (noting the employer's comments that "Reeves was so old that he 'must have come over on the Mayflower'" and that he was "too damn old to do the job."). There is nothing approaching this kind of evidence in the Millin affidavit.

7. The Wrongful Discharge Act provides:
 (a) Unless modified by union contract, an employer may dismiss any employee:
 (1) who engages in a business which conflicts with his duties to his employer or renders him a rival of his employer;

Supreme Court's observations on the Congressional interest behind the anti-discrimination in employment laws are equally applicable to the purposes of the Legislature in creating the Virgin Islands Wrongful Discharge Act.

The critical issue before us concerns the order and allocation of proof in a private, non-class action challenging employment discrimination. The language of Title VII makes plain the purpose of Congress to assure equality of employment opportunities and to eliminate those discriminatory practices and devices which have fostered racially stratified job environments to the disadvantage of minority citizens.... "Congress did not intend by Title VII, however, to guarantee a job to every person regardless of qualifications."

...

There are societal as well as personal interests on both sides of this equation. The broad, overriding interest, shared by employer, employee, and consumer, is efficient and trustworthy workman-ship assured through fair and racially neutral employment and personnel decisions.

*McDonnell–Douglas,* 411 U.S. at 800–01, 93 S.Ct. 1817 (citations omitted). I therefore agree with the movant: "While the specific elements of a wrongful discharge claim may be different than those under Title VII, the practical purpose of 'bring[ing] the litigants and the court expeditiously and fairly to th[e] ultimate question' applies with equal force." (Defs.' Supplemental Br. in Supp. of Mot. for Summ. J. at 2, citing 9 J. WIGMORE, EVIDENCE § 2489 (3d ed.1940).) Accordingly, this Court will adopt the *McDonnell Douglas–Burdine–Hicks* test in deciding WDA claims, thereby creating the following three prongs.

■ First, the plaintiff carries the initial burden under the WDA to establish a prima facie case of wrongful termination. *See McDonnell Douglas Corp.,* 411 U.S. at 802, 93 S.Ct. 1817. Therefore, the plaintiff must prove that: (1) he was an employee;[8]

(2) whose insolent or offensive conduct toward a customer of the employer injures the employer's business;

(3) whose use of intoxicants or controlled substances interferes with the proper discharge of his duties;

(4) who wilfully and intentionally disobeys reasonable and lawful rules, orders, and instructions of the employer; provided, however, the employer shall not bar an employee from patronizing the employer's business after the employee's working hours are completed;

(5) who performs his work assignments in a negligent manner;

(6) whose continuous absences from his place of employment affect the interests of his employer;

(7) who is incompetent or inefficient, thereby impairing his usefulness to his employer;

(8) who is dishonest; or

(9) whose conduct is such that it leads to the refusal, reluctance or inability of other employees to work with him.

(b) The Commissioner may by rule or regulation adopt additional grounds for discharge of an employee not inconsistent with the provisions enumerated in subsection (a) of this section.

(c) Any employee discharged for reasons other than those stated in subsection (a) of this section shall be considered to have been wrongfully discharged; however, nothing in this section shall be construed as prohibiting an employer from terminating an employee as a result of the cessation of business operations or as a result of a general cutback in the work force due to economic hardship, or as a result of the employee's participation in concerted activity that is not protected by this title.

4 V.I.C. § 76

8. An "employee" is one who is engaged in labor employment, but is not, among other things, an agricultural laborer, a seaman, a volunteer, or an executive/professional. *See* 24 V.I.C. § 62 (1997 & Supp.2001).

(2) of a covered employer;[9] (3) he was discharged; and (4) the discharge was wrongful. Once the plaintiff establishes a prima facie case, a presumption of wrongful discharge will arise against the employer. *See Burdine,* 450 U.S. at 254, 101 S.Ct. 1089.

■] Once the plaintiff establishes this presumption, the burden of production shifts to the employer to articulate some legitimate, statutorily-approved reason for the plaintiff's discharge. *See McDonnell Douglas Corp.,* 411 U.S. at 802, 93 S.Ct. 1817. Under this second prong, the employer has the burden of producing rebuttal evidence. *See Hicks,* 509 U.S. at 506–07, 113 S.Ct. 2742; *Burdine,* 450 U.S. at 255, 255 n. 9, 101 S.Ct. 1089 (noting that such evidence must be admissible). The employer can satisfy this burden by introducing evidence which, if true, would permit the conclusion that there was a non-wrongful reason for the termination. The rebuttal evidence a defendant in a wrongful discharge suit may offer is limited to those statutorily-approved reasons listed in 24 V.I.C. § 76. *See* note 9. A defendant, however, will not be prejudiced by this limitation as the WDA "cover[s] all or almost all legitimate reasons for discharge." *St. Thomas–St. John Hotel & Tourism Ass'n, Inc. v. Government of the United States Virgin Islands,* 218 F.3d 232, 244 (3d Cir.2000). Moreover, this second prong does not require the employer prove that it was motivated by the statutorily-approved reasons of 24 V.I.C. § 76. The employer need only raise a genuine issue of fact regarding whether the plaintiff was wrongfully discharged. *See Burdine,* 450 U.S. at 254, 101 S.Ct. 1089.

■ Finally, after the employer has offered one or more of the statutorily-approved reasons for its actions, the burden of production under the third and final prong shifts back to the plaintiff to show, by a preponderance of the evidence, that the proffered reason is pretextual. *See id.* at 256, 101 S.Ct. 1089. To satisfy this burden, the discharged employee must produce some direct or circumstantial evidence from which ·a factfinder could reasonably (1) disbelieve the employer's articulated legitimate reasons or (2) believe that a non-WDA approved reason was more likely than not a motivating or determining cause of the employer's action. *See Fuentes,* 32 F.3d at 764 (citing *Hicks,* 509 U.S. at 511, 113 S.Ct. 2742) (discussing discrimination law). The plaintiff, however, must show that the defendant was wrongfully motivated under the WDA standards, not whether the defendant was "wise, shrewd, prudent, or competent." *See id.* at 765 (stating that it is not enough simply to show that the employer's decision was wrong or mistaken). Hence, to succeed in a wrongful discharge action, a plaintiff must establish both a prima facie case of wrongful termination *and* demonstrate such "weakness, implausibilities, inconsistencies, incoherencies or contradictions in the employer's proffered legitimate reasons for its action ...." *Id.* (discussing discrimination law). Although a plaintiff's inability to provide evidence to rebut a defendant's proffered statutorily-approved reason for the termination will result in the loss of a presumption of a wrongful discharge and thus place a burden on the plaintiff to prevail, it stems from the inherent tension between the goal of preventing wrongful firings and our society's commitment to free decision-making by the private sector in economic affairs. *See Ezold v. Wolf, Block, Schorr & Solis–Cohen,* 983 F.2d 509, 531 (3d Cir. 1992) (discussing discrimination law). The

---

**9.** An "employer" is a person who "has employed five (5) or more employees for each working day in each of the twenty (20) or more calender weeks in the two (2) year period proceeding a discharge, but not a 'public employer.' " *Id.*

burden is thus the same for both WDA and Title VII claimants.

 Applying the *McDonnell Douglas–Burdine–Hicks* test to the facts at hand, Rajbahadoorsingh's claim under the WDA is groundless.[10] Although Rajbahadoorsingh has established a presumption of wrongful discharge by proving a prima facie case, this presumption was defeated upon Chase's proffer of legitimate, statutorily-approved reasons for his termination. In particular, Chase offers two reasons for Rajbahadoorsingh's discharge. First, it asserts that Rajbahadoorsingh engaged in activity that conflicted with his duties to Chase. *See* 24 V.I.C. § 76(a)(1) (1997 & Supp.2001) (stating that an employer may terminate an employee for "engag[ing] in a business which conflicts with his duties to his employer or renders him a rival of his employer"). Second, it contends that Rajbahadoorsingh disobeyed its orders to stop buying and selling automobiles. *See* 24 V.I.C. § 76(a)(4) (1997 & Supp.2001) (stating that termination is valid for one "who wilfully and intentionally disobeys reasonable and lawful rules, orders, and instructions of the employer"). From the preceding analysis on his federal discrimination claims, it is clear that Rajbahadoorsingh has failed to demonstrate any "weakness, implausibilities, inconsistencies, incoherencies or contradictions" in Chase's reasons to overcome the defendant's legitimate, statutorily-approved basis terminating him. Thus, Chase has discharged the plaintiff in accordance with Virgin Islands law. Therefore, this Court will grant defendant's motion for summary judgment on plaintiff's WDA claim.

### IV. CONCLUSION

Rajbahadoorsingh has failed to provide any evidence that would permit this Court to discredit Chase's nondiscriminatory, legitimate WDA-approved reasons for terminating the plaintiff. Therefore, this Court will grant the defendants' motion for summary judgment.

### ORDER

For the reasons set forth in the foregoing Memorandum of even date, it is hereby

**ORDERED** that defendants' motion for summary judgment (Docket No. 50) is **GRANTED**; it is further

**ORDERED** that defendants' motion to strike plaintiff's opposition to defendants' motion for summary judgment (Docket No. 56 and 57) is **MOOT**; and it is further

**ORDERED** that the plaintiff's complaint is **DISMISSED**.

---

10. Much of the plaintiff and defendant's respective arguments on this claim center around whether the WDA applies to supervisors. As this Court finds a legitimate reason for Rajbahadoorsingh's termination, it will leave this question for another case.